### Ellen E. Brinkerhoff et al., Appellees, v. Thomas S. Huntley et al. B. S. Adams and The State Bank of Chicago, Appellants.

#### Gen. No. 6,907.

1. INJUNCTION—*when appeal is from entire order refusing to dissolve and modifying temporary writ.* Where an order refusing to dissolve a temporary writ of injunction and modifying such writ was all a part of one order and the exceptions taken and the appeal prayed were as "to the entry of which order overruling said motion to dissolve and vacate said injunctional order," the appeal was from the entire order.

2. INJUNCTION—*when suit in foreign State not enjoined in favor of heir or devisee.* The courts of this State have no power to enjoin a suit in another State to enable an heir or devisee living here to avoid a distribution of assets in the foreign jurisdiction and to bring such assets into this State for distribution merely that such heir or devisee may profit by such transfer, where the effect of such decree would be to decrease the shares of other devisees, would take the fund from the depositary agreed upon by the parties, and would result in the resort to a different method of determining the value of lands and securities from that agreed upon by the parties, and where appellants would not have the power to comply with the order by withdrawing the securities from the depositary in the other State.

3. INJUNCTION—*when court will not restrain prosecution of suit in foreign jurisdiction.* A court of equity will not restrain the prosecution of a suit in a foreign jurisdiction unless a clear

equity is presented, requiring the interposition of the court to prevent a manifest wrong and injustice, it being insufficient that there may be reason to anticipate that the courts of the other State will arrive at a different judgment from that of the courts at the residence of the parties.

4. INJUNCTION—*bringing of action in foreign State because of better remedy not ground for injunction.* It is not inequitable and ground for an injunction that a person brings his action in a foreign State on account of the better remedy there obtainable.

5. INJUNCTION—*what not presumed for purpose of enjoining prosecution of action in foreign State.* It cannot be presumed, for the purpose of enjoining a person from prosecuting an action in a foreign State, that the court of such other State will not do justice between the parties and give effect to the rules of law applicable to the case.

Appeal from the Circuit Court of McHenry county; the Hon. ROBERT K. WELSH, Judge, presiding. Heard in this court at the April term, 1921. Reversed and remanded with directions. Opinion filed November 2, 1921. Rehearing denied May 3, 1922.

NEWMAN, POPPENHUSEN, STERN & JOHNSTON, for appellants B. S. Adams and State Bank of Chicago; EDWARD R. JOHNSTON, of counsel.

JOSLYN & JOSLYN and HENRY P. HEIZER, for appellee Ellen E. Brinkerhoff; A. D. EARLY, of counsel.

MR. JUSTICE JONES delivered the opinion of the court.

This is an appeal from an interlocutory order entered by the circuit court of McHenry county overruling a motion to dissolve a temporary injunction. The bill in this case was filed by Ellen E. Brinkerhoff et al. against the appellants, B. S. Adams and The State Bank of Chicago, as executors and trustees under the last will of John Quincy Adams, and also against twenty-three other defendants. The material allegations of the bill so far as they affect the rights and interests of the appellees and appellants here are that Abram B. Brinkerhoff and John Quincy Adams were in their respective lifetimes engaged in a joint

land venture in the State of South Dakota under a
trading contract entered into between them on Febru-
ary 22, 1900. Under this contract Adams purchased
extensive tracts of land in South Dakota with money
advanced to him by Brinkerhoff. The title to the
land was generally taken in Brinkerhoff's name. Oc-
casionally it was taken in the name of both Brinker-
hoff and Adams. The lands were managed and dis-
posed of under the contract by Adams and the profits
were equally divided between the two parties. In
addition to the lands they also acquired a large
amount of property including horses and farm imple-
ments located in South Dakota, each having an undi-
vided one-half interest therein. The said contract pro-
vided that nothing contained therein shall be deemed
to create any relationship of partnership between the
parties.

Brinkerhoff was a resident of Illinois and died
seized and possessed of a large estate consisting of
real estate in Illinois, Nebraska, Kansas, Montana,
South Dakota and other States and also at least
$200,000 in personal property. He died leaving a last
will and testament in and by which he devised and
bequeathed all of his property to the Home Trust &
Savings Bank of Elgin, Illinois, in trust, with direc-
tions to pay the entire net income therefrom to the
complainant herein, his widow, Ellen E. Brinkerhoff,
during her lifetime and after her death to divide the
estate among certain named beneficiaries. At the
time of Brinkerhoff's death in January, 1917, he had
invested about $175,000 in the South Dakota property
and Adams had invested about $45,000. The above-
mentioned trading contract provided that Adams
should have the right to sell any of the lands pur-
chased under it after first giving Brinkerhoff an
opportunity to buy. Subsequent to the death of
Brinkerhoff, Adams in November, 1917, acting under the
provisions of said trading contract, offered to buy the

entire interest of the Brinkerhoff estate in the South
Dakota property, both real and personal, for $200,000,
or to sell his interest therein upon the same basis,
taking into consideration the proportionate amounts
of the investments of the respective parties. There
were some infant devisees of Brinkerhoff but the offer
of Adams to buy was accepted by the adult devisees
including the complainant. A contract of sale was
entered into between Adams and said adult devisees
in and by which Adams agreed to purchase and the
adult devisees agreed to sell to him all interest of
the Brinkerhoff estate in said property in South Da-
kota for the sum of $200,000. Payment thereof was
allowed to be made in first mortgage notes, of which
$140,000 was to be secured by first mortgage on the
lands covered by the contract and the remaining
$60,000 on other lands in South Dakota or elsewhere,
as selected by Adams. These notes were to be deliv-
ered to the Mitchell Trust & Savings Bank of Mitchell,
South Dakota, as ancillary administrator of the es-
tate of Brinkerhoff, or to a trustee who might be ap-
pointed by some court in the State of South Dakota.
Said notes were to be deposited on or before January
21, 1921.

The contract of sale further provided that Ellen
E. Brinkerhoff should have the right to select mort-
gages to the amount of $26,666, which sum was the
value fixed upon her interest in the property in South
Dakota. The mortgages so to be selected by her were
to be transferred to her free and clear of any trust
or claim by any devisee under the Brinkerhoff will.
It also provided that the Brinkerhoff heirs should
procure without expense to Adams a decree of the
probate court of Hanson county, South Dakota, ap-
proving the sale to Adams of the Brinkerhoff inter-
ests mentioned in the contract of sale. Various
proceedings were afterwards had in the Hanson
county court for the purpose of investing Adams with

the legal title to all of said property. Under one of these proceedings the lands were struck off by the Mitchell Trust Company to Adams for $68,000; this bid was afterwards raised to $160,000. Upon the petition of the minors this sale was set aside and an appeal by Adams was taken, which appeal is now pending in the Hanson county circuit court. It is charged that in securing the decree of said court and in accepting said bid, Thomas S. Huntley, one of the principal beneficiaries under the will of Brinkerhoff, together with the Mitchell Trust Company and Herbert E. Hitchcock, its attorney, conspired and confederated together to defraud the complainant, but the bill expressly alleges that such conduct on their part was not with the knowledge or approval of Adams and was without his participation. Copies of various decretal orders and other proceedings in South Dakota are made a part of the complainant's bill as exhibits. The bill further alleges that Adams then finding that he was not getting title to the said property through such court proceedings, in Hanson county, filed a petition in the circuit court of Brule county, South Dakota, to quiet the title to the lands in question and alleges that the interests of Adams in the South Dakota lands at the time of the filing of his suit to quiet title is ''the entire possession, ownership and control of said lands.''

The answer of Mrs. Brinkerhoff to this petition, as it is set out in the bill of complaint in this cause, admits, among other things, her willingness to have the contract of sale with Adams carried out; that $200,000 fairly represents the value of the South Dakota property and that the sale should be carried out at that price in her own interests as well as that of her husband's estate; but she asks that said contract be reformed as between herself and the other Brinkerhoff devisees so that her interest in the securities to be deposited by Adams shall be declared to be $100,000

instead of $26,666, and she also prays that the con-
tract be specifically enforced. The petition and an-
swers filed in the South Dakota suit are made a part
of the bill here and it appears that subsequent to the
death of Brinkerhoff, his widow and Thomas S. Hunt-
ley, together with the other devisees under the Brink-
erhoff will, agreed that Mrs. Brinkerhoff should ac-
cept the provisions made for her in her husband's will
and that her interest in the South Dakota property
should be fixed at 4/30ths thereof, or the said sum of
$26,666; that afterwards she decided to renounce the
provisions made for her in the last will of her hus-
band and, by a subsequent agreement, the contract
with Huntley and others, fixing her interest in said
property, was canceled and rescinded. She thereafter
claimed one-half of the purchase price of the property
in South Dakota, or $100,000 instead of $26,666.

The petition of Adams in his South Dakota suit
to quiet title alleges that he had deposited with the
Mitchell Trust Company at Mitchell, South Dakota,
notes, mortgages and securities for upwards of
$200,000 in full compliance with the contract of sale,
and the bill of complaint here charges that the exec-
utors of the last will and testament of Adams, who
is now deceased, and which executors have been sub-
stituted for him as petitioners in the proceedings in
South Dakota, are now insisting on carrying out the
said contract of sale; that the executors of the last
will of Adams, deceased, are B. S. Adams and State
Bank of Chicago. The bill further alleges that said
executors are insisting upon an early trial of the
action to quiet title in South Dakota and are relying
upon the deposit of said securities with the said Mitch-
ell Trust Company as a full compliance with the terms
of the contract of sale in reference to the payment
of said claims. It also charges that the said Mitchell
Trust Company, by reason of its fraudulent conduct
in procuring the decretal orders in South Dakota and

through its participation in the alleged sales, has forfeited its right to be a depositary of said securities and that in equity the said securities rightfully belong within the jurisdiction of Illinois and should be in the hands of the executors of the Brinkerhoff estate and under the jurisdiction of the Illinois courts; that some of the securities deposited by Adams with the Mitchell Trust Company were scant securities and not in accordance with the contract; that the said Mitchell Trust Company and the said Huntley and also James H. Brinkerhoff, one of the devisees, are seeking to have the question of distribution determined by the South Dakota courts; that a renunciation of a will by a widow is unknown to the laws of South Dakota and that a widow has no right to renunciation under such laws and is not allowed to take any part of the estate except such part as was provided for her by the terms of the will; that if a distribution is made according to the laws of South Dakota and not according to the laws of the State of Illinois, in which latter State it is alleged said securities rightfully belong, then the rights and interests of the complainant Ellen E. Brinkerhoff will be prejudiced. The prayer for relief in complainant's bill so far as it affects the appellants here is that the petitioners in the proceedings to quiet title in South Dakota be enjoined, individually and as trustees, from further prosecuting the said suit in Brule county, South Dakota, or in any other court in said State to quiet the title to the lands in question until the further order of the circuit court of McHenry county, Illinois, or until the said defendants shall have paid over the $200,000 with interest in cash and securities in Illinois to Ellen E. Brinkerhoff and the other makers of the said contract of sale and the one-half thereof separately to said Ellen E. Brinkerhoff, said securities to be to the satisfaction of such payees in accordance with the terms of said contract.

The temporary writ of injunction in this case was

granted without notice and afterwards on February 1, 1921, an order was entered in the circuit court of McHenry county denying appellants' motion to vacate such temporary injunction. From this order this appeal is taken. The order denying the motion of appellants to dissolve the temporary injunction decreed a modification of the writ by requiring that said parties be restrained from prosecuting the suit to quiet title in South Dakota, not until the payment of $200,000 as originally ordered, but until they shall have paid to the receiver appointed by the circuit court of McHenry county the sum of $100,000 with interest thereon at 6 per cent per annum from December 31, 1917, to the date of making such payment, said payment to be made in money or securities and, if in securities, then in such securities as may be approved by the said Ellen E. Brinkerhoff or the said McHenry county circuit court. The effect of this modification was to require the deposit of $100,000 by the executors of Adams' will instead of $200,000, the whole sum of $100,000 being for the sole interest and benefit of Ellen E. Brinkerhoff. The said order overruling the motion to dissolve contains the prayer of appeal to this court and fixes the amount of bond.

It is urged that this appeal is taken from an order overruling the motion to dissolve the original temporary writ of injunction and not from the order modifying the temporary writ of injunction. We think this contention is without merit. The order refusing to dissolve the temporary writ and modifying the same is all a part of one order. It seems to us to be indivisible. The exceptions taken and the appeal prayed are as "to the entry of which order overruling said motion to dissolve and vacate said injunctional order." We think the appeal is from the entire order.

The bill of complaint in this case including the exhibits consists of several hundred pages of typewritten matter and makes a most careful and comprehensive

presentation of the complainant's claim for relief as against appellants. It is apparent from the face of the bill that the purpose of this proceeding as well as of the defense interposed by Ellen E. Brinkerhoff in the proceedings in which she has answered in South Dakota is not to avoid the contract of sale; it is clear that she is satisfied with all the terms of the contract except the provisions which fixed her interest in the purchase price at $26,666, and also except the provision requiring the deposit of securities to be made with the Mitchell Trust Company of South Dakota. The reason for her dissatisfaction with these provisions is obvious. Because of her renunciation of the provisions made for her in the last will and testament of her husband, she contends that she became and is entitled to one-half of all his real and personal estate remaining after the payment of his debts and costs of administration. She therefore insists that the proceeds of the sale of the property in South Dakota is personal property; that its situs is and should be in the State of Illinois and that if it were brought into this State she would get one-half thereof. On the other hand, if it is to be held in South Dakota by the Mitchell Trust Company and is to be distributed according to the laws of South Dakota, she will either get the sum of $26,666 or she will be entitled only to the proceeds of said $200,000 during her natural life.

It is not necessary to the decision of the questions here involved for us to determine whether or not there has been an equitable conversion of the Dakota real estate or whether or not the corpus in dispute is real or personal property. The real question to be decided is whether or not the courts of Illinois have the power to enjoin a suit in a foreign State when the manifest purpose of obtaining the injunction is to enable an heir or devisee living here to avoid a distribution of assets in the foreign jurisdiction and to

bring such assets here for distribution merely to profit by the transfer. We must decide this question in the negative. Among the reasons that may be given for our decision is that if the distributive share of Ellen E. Brinkerhoff is to be increased it can only be done at the cost of the other heirs and devisees of Brinkerhoff, including the infants. Again it appears from complainant's bill that Adams resorted to the depositary which the parties to the contract of sale agreed upon and there is no sufficient reason alleged why the aid of a court of equity should be sought in selecting another and different depositary and to locate such other depositary in a different State than the one selected by the parties to the contract. Moreover, the parties agreed upon the manner of determination and ascertainment of values of land and the sufficiency of securities. The circuit court interposed a different method of determining and ascertaining values of lands and the sufficiency of securities. This it had no right to do. The injunction goes to the extent of requiring appellants to bring into Illinois $100,000 in cash or that much in securities to be approved by Mrs. Brinkerhoff or by the court. This is in direct contravention of the terms of the contract made between the parties. The court had no right to impose new terms and conditions upon the parties to the contract materially and vitally different from those which the parties themselves had agreed upon. Another reason upon which our decision is grounded is that our courts should never be disposed to attempt to restrain the courts of a foreign State from proceeding with a pending suit except to prevent a manifest wrong or injustice and also except it clearly appears that full and complete relief cannot be obtained in the foreign jurisdiction. The mere apprehension that the South Dakota courts will not fairly determine whether or not the securities already deposited by Adams with the Mitchell Trust Company are satisfactory and ample

under the terms of the contract is not sufficient cause to require a transfer of the securities from South Dakota to Illinois in order that the Illinois court may pass judgment upon the amount and sufficiency of such securities. Even though some of the securities deposited with the Mitchell Trust Company were scant, we must assume that the circuit court of Brule county, South Dakota, which the bill alleges is a court of general chancery jurisdiction, will not grant the relief in the suit now pending there and which is sought to be restrained, unless the contract is fully complied with in reference to the sufficiency of the securities deposited. Furthermore, it appears from the allegations of complainant's bill that the deposit in securities in the sum of $200,000 has already been made by Adams with the said Mitchell Trust Company. It does not appear that appellants have the power or ability to withdraw the securities so deposited or any part of them and to bring them into Illinois to comply with the requirements of the writ of injunction here.

A court of equity will not restrain the prosecution of a suit in a foreign jurisdiction unless a clear equity is presented, requiring the interposition of the court to prevent a manifest wrong and injustice. It is not enough that there may be reason to anticipate a difference of opinion between the two courts, and that the courts of a foreign State would arrive at a judgment different from the decisions of the courts in the State of the residence of the parties. *Royal League v. Kavanagh*, 233 Ill. 175, and cases cited. It is also said in *Royal League v. Kavanagh, supra,* that it is not inequitable for a party to prosecute a legal demand against another in any forum which will take legal jurisdiction of the case, merely because that forum will afford him a better remedy than that of his domicile. To justify equitable interposition it must be made to appear that an equitable right will otherwise

be denied the parties seeking relief and also that the courts of this State have no reason to suppose that the court of another State will not do justice between parties and give effect to the rules of law applicable to the case.

So then we cannot assume that the circuit court of Brule county, South Dakota, which is admitted to be a court of general equity jurisdiction, will not properly decide all questions which are before it. For the reasons given we are of the opinion that the motion to dissolve the temporary writ of injunction should have been allowed and this cause is therefore reversed and remanded, with directions to the chancellor to enter an order dissolving said writ.

*Reversed and remanded with directions.*