(No. 71813.—
(No. 71815.—

RICHARD PFAFF v. CHRYSLER CORPORATION *et al.* (Chrysler Corporation, Appellee; Skyline Industrial Service, Inc., Appellant).—THE DAIWA BANK, LIMITED, Appellant, v. MONZER HOURANI *et al.*, Appellees.

*Opinion filed December 4, 1992.—Rehearing denied March 29, 1993.*

BILANDIC, J., concurring in part and dissenting in part.
HEIPLE, J., dissenting.

O'Connor, Schiff & Myers, of Chicago (Loretta M. Griffin, Ana Maria Downs and Patrick D. Riley, of counsel), for appellant.

Pappas, Power & Marcus, of Chicago (Debra K. Marcus, William R. Power and Stephen J. Tasch, of counsel), for appellee.

Lord, Bissell & Brook, of Chicago (Edward C. Fitzpatrick, Hugh C. Griffin, Stephen C. Ascher, Diane I. Jennings and Albert E. Fowerbaugh, Jr., of counsel), for appellant.

McDermott, Will & Emery, of Chicago (John T. Schriver and Steven F. Pflaum, of counsel), and Bochte & Kuzniar, of St. Charles (William F. Bochte, of counsel), for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

For the sake of clarity, we shall present the procedural background and discussion of these two consolidated interlocutory appeals, cause No. 71813 (Skyline) and cause No. 71815 (Daiwa Bank), separately.

## PROCEDURAL BACKGROUND

### Skyline

Richard Pfaff (Pfaff), plaintiff, filed an action against Chrysler Corporation (Chrysler), a Delaware corporation, in the circuit court of Cook County, alleging a violation

of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*) and common law negligence. Venue was transferred to the circuit court of Boone County, where Chrysler filed a third-party complaint against Skyline Industrial Services, Inc. (Skyline), Pfaff's employer, ostensibly a Michigan corporation. Following a ruling striking and dismissing several counts of the third-party complaint, Chrysler filed an action against Skyline in the circuit court of Wayne County, Michigan. Skyline then successfully moved the Boone County, Illinois, circuit court to permanently enjoin Chrysler from proceeding in the Michigan action. Chrysler appealed the trial court's decision to our appellate court. The appellate court reversed. (208 Ill. App. 3d 910.) We granted Skyline's petition for leave to appeal (134 Ill. 2d R. 315) and consolidated Skyline's appeal with the Daiwa Bank appeal.

Chrysler subsequently filed a motion in this court to dismiss Skyline's appeal, which motion was taken with the case. The motion to dismiss Skyline's appeal is hereby denied.

For reasons which follow, we affirm the decision of the appellate court, which reversed the order of injunction entered by the trial court.

### Daiwa Bank

The Daiwa Bank, Limited (Daiwa), filed a mortgage foreclosure action on real property, held in trust, located in Carpentersville, Kane County, Illinois. La Salle National Trust, N.A., as trustee, and Lakes of Dundee Development Venture (the joint venture), as beneficial owner, were named as defendants. The action additionally sought damages for fraud and breach of contract against the joint venture and Monzer Hourani, Parsifal Corporation, Hourani Family Trust and Hourani International Corporation (the Hourani defendants), as guarantors of the mortgage loan. The Hourani defendants then

filed a lender liability action in the State district court of Harris County, Texas, against Daiwa Bank and Coventry Development Associates Chicago, Limited (Coventry), a partner in the joint venture.

Daiwa filed a motion in the Kane County circuit court to permanently enjoin the Hourani defendants from proceeding against Daiwa Bank in the Texas action. Daiwa's motion to enjoin was granted by the trial court and the Hourani defendants appealed to our appellate court. The appellate court reversed. (207 Ill. App. 3d 1112 (unpublished order under Supreme Court Rule 23).) We allowed Daiwa's petition for leave to appeal (134 Ill. 2d R. 315), ordering consolidation with Skyline's appeal.

The Hourani defendants subsequently filed a motion to dismiss the appeal, which was taken with the case. We now deny the motion to dismiss the appeal. Furthermore, for reasons which follow, we affirm the decision of the appellate court, which reversed the trial court's grant of an injunction.

## ISSUES

The two issues we must resolve are: (1) what constitutes the proper standard for enjoining the prosecution of a subsequent action filed in a sister State court; and (2) whether issuance of the permanent injunctions restraining Chrysler and the Hourani defendants from prosecuting actions in other States' courts was a proper exercise of the trial court's discretion.

## DISCUSSION

### The Standard of Analysis

On appeal, Skyline and Daiwa Bank contend that the appellate court misapprehended the standard of analysis utilized in determining whether to enjoin a party from proceeding with litigation in another State.

42

Skyline and Daiwa argue that the appellate court recognizes a dual standard. Where the action in the other jurisdiction is instituted *before* the Illinois action, the court may only enjoin a litigant from instituting or proceeding with a foreign suit which will result in fraud, gross wrong or oppression. (See *Block & Co. v. Storm Printing Co.* (1976), 40 Ill. App. 3d 92, 95; *Lowe v. Norfolk & Western Ry. Co.* (1981), 96 Ill. App. 3d 637, 644.) Conversely, where the action in the other jurisdiction is instituted *after* the Illinois action, Skyline and Daiwa contend, a lesser standard applies and the court may enjoin a litigant merely if the foreign action appears "oppressive, vexatious, annoying, harassing, or unduly interfere[s] with the progress of a prior instituted local action." (See *Block & Co.*, 40 Ill. App. 3d at 95-96; *Lowe*, 96 Ill. App. 3d at 645; *National Hockey League v. Intermart, Inc.* (1984), 127 Ill. App. 3d 1072, 1077; *Wells v. Wells* (1976), 36 Ill. App. 3d 91, 93.) Daiwa further contends that in making the determination of the propriety of injunctive relief in these circumstances, courts are to look to whether complete relief can be obtained in the Illinois action, and if so, the filing of a foreign suit on the same issues will be deemed vexatious and harassing. See *National Hockey League*, 127 Ill. App. 3d at 1078; *Lowe*, 96 Ill. App. 3d at 645.

Chrysler and the Hourani defendants assert that the appellate court correctly recognized that controlling precedent has established but one standard of analysis, *i.e.*, the issuance of an injunction where the foreign proceeding will result in fraud, gross wrong or oppression, regardless of any priority of filing suit. *Royal League v. Kavanagh* (1908), 233 Ill. 175, 183; *Illinois Life Insurance Co. v. Prentiss* (1917), 277 Ill. 383, 386; see *Chicago & Eastern Illinois R.R. Co. v. Reserve Insurance Co.* (1978), 59 Ill. App. 3d 206, 209; *American Re-Insur-*

*ance Co. v. MGIC Investment Corp.* (1979), 73 Ill. App. 3d 316, 322.

It has long been established in Illinois that a court of equity has the power to restrain a person over whom it has jurisdiction from instituting a suit (*Harris v. Pullman* (1876), 84 Ill. 20, 28) or proceeding with suit in a foreign State (*James v. Grand Trunk Western R.R. Co.* (1958), 14 Ill. 2d 356, 363; *Crawley v. Bauchens* (1974), 57 Ill. 2d 360, 366). Courts do not, in such cases, pretend to direct or control the foreign court, but the decree acts solely upon the party. The jurisdiction rests on the authority vested in courts of equity over persons within the limits of their jurisdiction and who are amenable to process, to stay acts contrary to equity and good conscience. *Royal League v. Kavanagh* (1908), 233 Ill. 175, 183.

The exercise of such power by equity courts in Illinois is considered to be a matter of great delicacy, to be "invoked with great restraint to avoid distressing conflicts and reciprocal interference with jurisdiction." *James*, 14 Ill. 2d at 363; *cf. Cole v. Cunningham* (1889), 133 U.S. 107, 121, 33 L. Ed. 538, 544-45, 10 S. Ct. 269, 274 (extreme delicacy, however, should not deter the court from controlling the conduct of a party within its jurisdiction to prevent oppression or fraud, as no rule of interstate comity forbids such exercise).

In *Royal League*, 233 Ill. at 183, a fraternal insurance society filed a bill for an injunction in the circuit court of Cook County, seeking to restrain a beneficiary from instituting an action in Missouri to recover benefits under the policy. At the time the bill was filed in Illinois, there was no previously filed and pending action in Missouri. This court established a standard of analysis by its statements that courts possessed the undoubted authority to restrain a litigant from prosecuting a foreign action which would result in fraud, gross wrong or op-

pression, but that a litigant ought not be restrained "unless a clear equity is presented requiring the interposition of the court to prevent a manifest wrong and injustice." (*Royal League*, 233 Ill. at 183.) "To justify equitable interposition it must be made to appear that an equitable right will otherwise be denied the party seeking relief." (*Royal League*, 233 Ill. at 183.) The *Royal League* court thus affirmed the denial of injunctive relief on the basis that it was not inequitable for a litigant to pursue an action in a forum which could afford him a better remedy.

In *Illinois Life Insurance Co. v. Prentiss* (1917), 277 Ill. 383, the beneficiary of an insurance policy first filed suit in the circuit court of Cook County to recover benefits under the policy. The insurance company then sought to enjoin the beneficiary from filing suit in Missouri to recover benefits under the policy. In determining the appropriateness of an injunction, *Prentiss* reiterated the standard of analysis enunciated in *Royal League*. (*Prentiss*, 277 Ill. at 385-86.) The court relied upon the *Royal League* standard even though the Illinois action was filed first. The court then applied *Royal League* and determined that injunctive relief was inappropriate, as the application of the more favorable Missouri procedural law in the foreign suit did not constitute a manifest wrong or oppression.

Daiwa contends that *Royal League* and *Prentiss* did not concern the situation where successively filed actions which are pending simultaneously were maintainable, as in the present case. We believe that distinction is irrelevant, considering that in *Prentiss* the first action was then pending in Illinois and this court, nonetheless, applied the *Royal League* standard. Furthermore, contrary to Daiwa's assertions, *Prentiss* touched upon the issue of priority of suit. The *Prentiss* court noted, "The bare fact that a suit on this policy has been begun and is now

pending in this State, in the absence of equitable considerations, furnishes no ground to enjoin appellant from pursuing his claim in a foreign jurisdiction ***." (*Prentiss*, 277 Ill. at 387-88.) Thus, this court did not allow any possible deference shown to prior-acquired jurisdiction, even that of an Illinois court, to diminish the requirement that a clear equity be presented before injunctive relief was appropriate.

Older Illinois appellate decisions have also relied upon the standard established by *Royal League* and *Prentiss*, regardless of whether suit was first filed in Illinois or the foreign State. In *Catherwood v. Hokanson* (1916), 201 Ill. App. 462, suit was filed in Illinois seeking the construction of a will creating a trust. Defendants filed an action in Indiana. The plaintiffs then sought to enjoin the defendants from proceeding with the Indiana action. The Indiana action essentially duplicated the Illinois action, but also requested a partition of certain real property located in Indiana. Quoting verbatim the standard established by *Royal League*, the court held that the facts did not justify enjoining the defendants, and so reversed the grant of injunctive relief.

In *Brinkerhoff v. Huntley* (1921), 223 Ill. App. 580, the defendants filed a suit to quiet title in South Dakota. The plaintiff then filed a bill in Illinois, seeking to enjoin the defendants from proceeding with their South Dakota action. The appellate court reversed the trial court's grant of an injunction on the basis that the standard established by *Royal League* had not been met and complete relief was obtainable in South Dakota. The court did not give any consideration to the fact that a prior action was pending in South Dakota.

A trio of divorce cases further illustrates that the *Royal League* standard has been consistently applied by our appellate court without consideration to priority of filing suit. See *Kahn v. Kahn* (1945), 325 Ill. App. 137,

146-47 (*Royal League* relied upon as standard of analysis in affirming the denial of a motion to dissolve an injunction, where an Illinois action commenced first and plaintiff sought to enjoin defendant from instituting a second action in Nevada); *Russell v. Russell* (1946), 329 Ill. App. 580, 586 (*Royal League* relied upon in affirming the grant of an injunction, where Illinois action commenced first and plaintiff sought to enjoin defendant from proceeding with a subsequently filed Nevada action); *Kleinschmidt v. Kleinschmidt* (1951), 343 Ill. App. 539, 547 (*Royal League* relied upon to reverse the grant of an injunction, where first divorce action was filed by husband in Florida and wife filed second divorce action in Illinois, which action also sought to enjoin the husband from proceeding in Florida).

It is Skyline and Daiwa's position that a dual standard was developed in *James v. Grand Trunk Western R.R. Co.* (1958), 14 Ill. 2d 356. In *James*, the plaintiff filed a wrongful death action in Illinois against the defendant railroad company. The defendant, however, obtained a temporary injunction in Michigan, where the plaintiff resided, restraining her from prosecuting the Illinois action. Plaintiff moved in the Illinois action for a counterinjunction, a temporary injunction enjoining the enforcement of the Michigan injunction. The motion was denied and plaintiff appealed. Following plaintiff's arrest by Michigan authorities for contempt and the issuance of a second injunction by the Michigan court, this court entered orders restraining defendant from proceeding in Michigan.

On appeal, the court viewed the case as involving two issues, the operative effect of the foreign injunction on the pending Illinois litigation, and the propriety of the issuance of the counterinjunction. In discussing the effect of the foreign injunction, the court made the statement upon which Skyline, Daiwa and subsequent appellate de-

cisions so heavily rely to support a dual standard. "Illinois has consistently followed the course of refusing to restrain the prosecution of a *prior instituted action* pending in a sister State unless a clear equity is presented requiring the interposition of the court to prevent a manifest wrong and injustice \*\*\*." (Emphasis added.) (*James*, 14 Ill. 2d at 363.) The opinion indicates that considerations of comity form the basis for this practice by Illinois courts. The opinion then concludes that comity does not, however, conversely compel an Illinois court to recognize a foreign injunction restraining litigants from prosecuting a previously instituted Illinois case.

The statement upon which Skyline and Daiwa so heavily rely occurs in the context of the *James* court's discussion of whether to yield to considerations of comity and afford recognition to the Michigan injunction. We do not believe that the court intended by this statement that an application of the *Royal League* standard should turn upon any priority in filing suit. The court's discussion, rather, indicates that principles of comity, more so than equity, prevent Illinois courts from granting injunctive relief under circumstances where there exists a prior instituted foreign action. (See Annot., 6 A.L.R.2d 896, 899 (1949).) To say that Illinois will refrain because of comity from restraining a party when a sister State has first acquired jurisdiction is not to say that our courts should enjoin actions based on something less than the prevention of manifest wrong and oppression whenever Illinois acquires jurisdiction first. *James* does not stand for the proposition that the *Royal League* standard is diminished and a less stringent *equitable* analysis is appropriate where a foreign action is filed after an Illinois action.

The *James* court then discussed the second issue before it, the propriety of a counterinjunction restraining the defendant railroad. The *James* court cited the basic

principle that a court has the authority to enjoin proceedings in another court in order to protect its jurisdiction. (*James*, 14 Ill. 2d at 368.) The court determined that it could not ignore the strong factual evidence of coercion in the record before it and recognized that the intended effect of the Michigan injunction was to wrest jurisdiction from the Illinois court. "[T]he Michigan injunction was in everything but form an order restraining the Illinois court and determining the cases it may properly try." (*James*, 14 Ill. 2d at 368.) The court, accordingly, reversed and remanded for issuance of an injunction.

*James* represents a strong remedy in the face of equally strong circumstances: the jurisdiction of an Illinois court was threatened by foreign injunction, not by the mere institution of the foreign action. Accordingly, *James* does not support the proposition that the mere institution of a subsequent foreign action threatens the first-acquired jurisdiction of Illinois courts sufficient to justify an injunction.

*Crawley v. Bauchens* (1974), 57 Ill. 2d 360, further confirms our view that *James* did not develop a dual standard. In *Crawley*, a divorce decree was granted in Illinois, awarding custody of the couple's minor child to the former wife. She and her new spouse subsequently instituted adoption proceedings in Panama, where they and the child resided. Upon the former wife's visit to Illinois, the former husband filed post-divorce proceedings, requesting that his ex-wife be held in contempt and seeking to restrain her from removing the child from Illinois and proceeding with the Panama adoption. Citing *Prentiss*, this court stated that an injunction is called for only "when the prosecution of the action in another jurisdiction would result in fraud, gross wrong or oppression." (*Crawley*, 57 Ill. 2d at 366.) Despite that the Panamanian action was instituted after the Illinois divorce pro-

ceeding, this court did not consider that that fact allowed for a less stringent standard of analysis.

Skyline and Daiwa, however, cite to several appellate decisions which interpret *James* as developing a dual standard on the basis of the priority of filing suit. *Block & Co. v. Storm Printing Co.* (1976), 40 Ill. App. 3d 92, is the seminal case. The court in *Block & Co.* wrongly interpreted *James'* emphasis on the policy of protecting first-acquired jurisdiction and its statement concerning a "prior instituted action" as a justification to reject the *Royal League* standard. Citing no Illinois decisions, *Block & Co.* concludes that in cases where the foreign action is instituted after the Illinois action, it is appropriate to enjoin a litigant merely on the basis that the foreign action appears to be "oppressive, vexatious, annoying, harassing, or unduly interfere[s] with the progress of a prior instituted local action." *Block & Co.*, 40 Ill. App. 3d at 95; see *Lowe v. Norfolk & Western Ry. Co.* (1981), 96 Ill. App. 3d 637, 645; *National Hockey League v. Intermart, Inc.* (1984), 127 Ill. App. 3d 1072, 1077 (injunction appropriate when foreign action either likely to result in fraud or gross wrong or oppression, or appears to be "oppressive, vexatious, annoying, or harassing, or [causes] undue interference").

Indeed, our appellate court has considered the oppressive, vexatious or harassing character of a subsequent foreign action as a consideration in the standard of analysis. (See *Catherwood v. Hokanson* (1916), 201 Ill. App. 462, 466 (court relied upon the *Royal League* standard of analysis, acknowledging as well that "when complete relief can be had where litigation is pending, the institution of foreign proceedings will be regarded 'as a vexatious harassing of the opposite party' "); see *Lowe v. Norfolk & Western Ry. Co.* (1981), 96 Ill. App. 3d 637; *Wells v. Wells* (1976), 36 Ill. App. 3d 91, 93 (where the court looked to the *Royal League* standard

for its overriding analysis and considered the nature of subsequent proceedings ("vexatious harassing") as a factor in that analysis); *Chicago & Eastern Illinois R.R. Co. v. Reserve Insurance Co.* (1978), 59 Ill. App. 3d 206, 209 (*Royal League* relied upon as standard of analysis and grant of injunction reversed as no substantial evidence of harassing litigation was presented).) However, these cases do not support Skyline and Daiwa's view that a court need not look to the more stringent *Royal League* standard simply on the basis that the Illinois action is instituted before the foreign action, or that complete relief can be had in the pending litigation. See 42 Am. Jur. 2d *Injunctions* §221 (1969).

We conclude that the appropriate standard for determining whether to restrain a party from prosecuting an out-of-State action is stated in *Royal League*. An injunction in such circumstances is appropriate only when prosecution of the foreign action would result in fraud or gross wrong or oppression, or when a clear equity is presented which requires such restraint to prevent a manifest wrong and injustice. (*Royal League*, 233 Ill. at 183.) This standard is appropriate regardless of whether the foreign action is filed before or after the Illinois action. The fact that a subsequent foreign action may be vexatious and harassing is but a consideration in the overriding standard of analysis, as opposed to being a standard in and of itself.

## SKYLINE

### *Facts*

Plaintiff Pfaff was employed by Skyline and sustained injuries while working on or about railroad cars located on premises owned by Chrysler. Pfaff filed a complaint in the circuit court of Cook County against Chrysler alleging common law negligence and a violation of the

Structural Work Act. The cause was transferred to the circuit court of Boone County on Chrysler's *forum non conveniens* motion. Pfaff then amended his complaint, naming J.P. Cullen & Sons, Inc., and J.P. Cullen & Son Construction Corporation (Cullen) as additional defendants.

Chrysler responded to Pfaff's action by filing a third-party complaint against Skyline and Cullen. The first eight counts of the complaint sought recovery against Skyline, alleging common law indemnity (count I); contribution (count II); contractual indemnification against losses and related defense costs (count III); contractual indemnification against losses and related defense costs resulting from violations of the Structural Work Act (count IV); a breach of contract for failure to purchase liability insurance (count VI) (no count V appeared); breach of express and implied warranties for the failure to perform in a good and workmanlike manner, resulting in an entitlement to indemnification or contribution (count VII); breach of a contractual duty "to accept full responsibility for injuries" suffered by employees, resulting in an entitlement to indemnification against losses and defense costs (count VIII); and breach of a contractual duty to defend and hold harmless, whereby Chrysler sought "complete indemnification" against any judgments or settlements, including defense costs (count IX).

Chrysler's contractual claims were based upon several written purchase order agreements entered into between Chrysler and Skyline in Michigan. The agreements stated that, with respect to certain possible allegations of negligence which could potentially form the basis for indemnification, Michigan law was to apply.

Skyline filed a motion to dismiss, which the trial court considered to be pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). On June 29, 1989, following a hearing on

the motion, the trial court struck count I, on the basis that common law indemnity for one's own negligence is not recognized in Illinois (*Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26). With respect to the several counts alleging contractual indemnity (III, IV, VII, VIII and IX), the trial court first determined that choice-of-law considerations required the application of Illinois law, regardless of the parties' contractual election concerning governing law (*Donaldson v. Fluor Engineers, Inc.* (1988), 169 Ill. App. 3d 759). The trial court then applied Illinois law, and determined that contractual indemnification against one's own negligence was prohibited. (Ill. Rev. Stat. 1987, ch. 29, par. 61.) The trial court observed that counts III, IV, VII, VIII and IX were essentially actions for contractual indemnity and therefore struck *those counts* as legally insufficient. The trial court also struck for factual insufficiency count VI, which alleged a breach of contract for failure to purchase insurance. In responding to Chrysler's query as to whether the counts were dismissed with prejudice, the trial court stated:

> "I don't know if the—as I said, some of these I don't see how they can be cured because of the nature of them. The one with regard to insurance, they may try to allege something else. I don't know. Do you want an opportunity to amend?"

In response to a subsequent request by Skyline for clarification as to whether the ruling was with prejudice as to all counts except the breach of contract count, the trial court explained that it wished to allow Chrysler to plead over "these other counts that I have dismissed" so as to preserve any objections to the ruling. The resulting order granted the motion to dismiss, stating that counts I, III, IV, VI, VII, VIII and IX were stricken without prejudice and with leave to amend. The trial court disallowed the inclusion in the order of dismissal his ruling that Illinois law governed the parties' indemnification

contract clause. Skyline did not thereafter seek entry of a final order of dismissal.

Chrysler subsequently filed an amended third-party complaint which reasserted the contribution, common law and contractual indemnity counts, and amended the count pertaining to the procurement of insurance. Skyline moved to dismiss the amended complaint, asserting the recognized invalidity of indemnity in Illinois. Without responding to Skyline's motion to dismiss, Chrysler filed a second-amended third-party complaint which alleged only contribution causes of action against Skyline and Cullen. Skyline did not raise any objections to the filing of the second-amended third-party complaint.

Skyline subsequently filed a second motion seeking to dismiss the previously stricken counts, pursuant to section 2—615, and a ruling pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement or appeal of such order of dismissal. For support, Skyline alleged that Chrysler had previously advised Skyline that it would withdraw its first-amended third-party complaint and file a second-amended complaint solely under the Illinois Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1987, ch. 70, par. 301 *et seq.*). Skyline alleged that Chrysler's action in doing so revealed that Chrysler conceded that its allegations of indemnity were legally insufficient. Skyline also alleged that Chrysler had filed suit against Skyline in the circuit court of Wayne County, Michigan, seeking a recovery based on the same causes of action previously rejected by the Boone County trial court.

A copy of Chrysler's Michigan complaint was attached to Skyline's dismissal motion. The complaint generally alleged that the contract between Chrysler and Skyline, evidenced by the purchase order agreements, was formed in Michigan. Count I of Chrysler's Michigan complaint alleged that Skyline breached its contractual

obligations to: (1) assume Chrysler's defense, hold harmless and indemnify Chrysler against "all costs, expenses and other sums which it may be required to pay" because of the Boone County action; and (2) secure liability insurance. Count II sought a declaratory judgment as to Skyline's contractual obligation to defend, hold harmless and indemnify Chrysler against costs and expenses incurred in defense of the Boone County action.

Before the trial court ruled on Skyline's dismissal motion, Skyline amended the motion, requesting that Chrysler be enjoined from proceeding with the Michigan action on the theory that Chrysler was collaterally estopped from relitigating the causes of action previously stricken. Chrysler responded, alleging, *inter alia*, that because Skyline had filed a responsive pleading in the Michigan action, including a motion for summary judgment or stay of proceedings, Skyline's motion to enjoin should be denied.

A hearing on Skyline's amended motion to dismiss was held on July 19, 1990. Chrysler agreed that the contractual indemnity causes which comprised the Michigan action had been previously before the Illinois trial court. Chrysler contended, however, that the causes were dismissed with leave to amend, were subsequently amended, and then withdrawn from Boone County. According to Chrysler, it then filed the Michigan action and properly brought the contractual claims within the jurisdiction whose law governed the contract. Chrysler argued that, therefore, no indemnity or breach of contract claims remained pending before the Boone County court and that no final order had ever been entered by the court.

The trial court found that it had made no final ruling with respect to the indemnity and breach of contract claims previously stricken and dismissed and that it could yet reconsider that ruling:

"In looking at this, what we have is certain causes of action that were filed by way of a counterclaim in Illinois. And they were ruled on in Illinois, most of which were ruled as not—not stating a cause of action or there was some defense which the [c]ourt felt was meritorious under the law. *That was not a final judgment* \* \* \*.

\* \* \*

[T]he matter is already under litigation and already been ruled on and it's still pending before this [c]ourt by virtue of the fact *it's not a final and appealable order.*

\* \* \*

Your claim has been dismissed. It's not appealable yet, but *there's no final order here,* but there is a ruling from the [c]ourt \* \* \*. *I could reconsider my ruling, I could uphold my ruling* \* \* \*." (Emphasis added.)

The trial court rejected Skyline's collateral estoppel argument as a basis for an injunction, finding that the indemnity and breach of contract claims remained pending before the court. The trial court also rejected Skyline's alternative request for a Rule 304(a) finding of appealability (134 Ill. 2d R. 304(a)) with respect to the order striking and dismissing those claims. The trial court, however, enjoined Chrysler from proceeding with the Michigan action, on the basis that Chrysler's conduct in doing so undermined the court's jurisdiction and such relief was necessary to protect "the proceedings and to protect litigants before it from multiple lawsuits on the same issues." Chrysler appealed.

*Chrysler's Pending Motion to Dismiss Skyline's Appeal*

On January 16, 1992, Chrysler filed in this court a motion to dismiss Skyline's appeal predicated upon a purported settlement of Pfaff's personal injury action by the parties and a voluntary dismissal with prejudice of that action on January 15, 1992. Attached to the motion was a copy of the order of dismissal which stated that the parties had stipulated to the dismissal and that

Chrysler's second-amended third-party complaint against Skyline, alleging contribution, was also dismissed with prejudice.

On January 21, 1992, Skyline filed its objection to Chrysler's motion to dismiss the appeal on the basis that the order dismissing the cause was entered *ex parte*; Skyline had not agreed to waive its worker's compensation lien and had not participated in or agreed to any settlement of the Pfaff personal injury action; nor had Chrysler agreed to release its contractual indemnification causes of action filed in Michigan or conceded that dismissal of the Pfaff case would have *res judicata* effect upon the claims pending before the Michigan court. Skyline further advised this court that Skyline had filed a motion to vacate the dismissal of the cause in the trial court and that a hearing on the motion was scheduled for January 22, 1992. On January 22, 1992, we ordered that Chrysler's motion to dismiss Skyline's appeal be taken with the case.

Also on January 22, 1992, the trial court heard arguments on Skyline's motion to vacate the order of dismissal. The trial court indicated that it did not approve of the wording of the order of dismissal or its *ex parte* nature, and vacated the order. The trial court observed, however, that the third-party plaintiff, Chrysler, and Cullen could not be prevented from voluntarily dismissing their claims against one another. In such case, the trial court indicated, it would require that any order of dismissal specify that the entire case, including the contractual indemnification causes against Skyline, be dismissed with prejudice. The trial court stated that Chrysler had abandoned the contractual indemnity claims previously before the court. Thus, the court stated that it did not want the order of dismissal to be interpreted as preserving those claims for future litigation.

Following this discussion, Pfaff's counsel stated that plaintiff would accept Chrysler and Cullen's offer of settlement and motioned to dismiss the cause. Chrysler and Cullen initially joined in the motion; however, after a brief recess, Chrysler withdrew its motion because Chrysler could not agree to settle and dismiss the cause by means of the order proposed by the trial court. Plaintiff, accordingly, also withdrew his motion to dismiss.

Chrysler now argues that Skyline has interfered with the settlement of the underlying personal injury action for no reason other than to keep this appeal alive. We disagree. It is clear that Skyline opposed the trial court's order, purportedly dismissing the entire cause, because the order failed to state that Chrysler's previously alleged claims for contractual indemnity were dismissed with prejudice. Skyline's opposition goes to an essential element of this appeal: the actual status of these claims at the time Chrysler was enjoined. Under these circumstances, we hardly think Skyline's opposition was manufactured merely to preserve its appeal. Whether Skyline has any legal basis to argue that its participation was necessary to the settlement of the underlying personal injury action is beside the point. The status of the previously stricken indemnity and breach of contract claims remained unclear. Skyline had reason to oppose the trial court's order dismissing the underlying action.

Chrysler also contends that the trial court "refused to enter any dismissal order, even if a settlement could be reached which would include the satisfaction of Skyline's Worker's Compensation Lien, unless Chrysler also agreed to dismiss its independent contractual cause of action pending against Skyline in Michigan." Chrysler's argument misstates the record. The trial court agreed to an order which would dismiss the entire Illinois "cause."

We have considered the pleadings in support of and in opposition to Chrysler's motion, as well as a record of

proceedings before the trial court on January 22, 1992. Thus, as a preliminary matter, we deny Chrysler's motion to dismiss this appeal.

## Discussion

Skyline asserts that the trial court properly exercised its discretion to enjoin Chrysler from proceeding with the Michigan action. In Skyline's view, the decision was proper, even assuming *arguendo* an application of the *Royal League* standard, because Chrysler is attempting to engage in forum shopping and evade Illinois law and jurisdiction by proceeding in Michigan.

As stated previously, the trial court has the authority to restrain the prosecution of a foreign action which will result in fraud or gross wrong or oppression; a clear equity must be presented requiring the interposition of the court to prevent manifest wrong and injustice. (*Royal League*, 233 Ill. at 183.) What constitutes a wrong and injustice requiring the court's interposition must necessarily depend upon the particular facts of the case. (*Catherwood v. Hokanson*, 201 Ill. App. at 465.) There is no general rule as to what circumstance constitutes a proper case for the exercise of the trial court's discretion. (See *Wabash Ry. Co. v. Lindsey* (1933), 269 Ill. App. 152, 159.) The granting of an injunction will depend on specific circumstances as to whether equitable considerations in favor of granting the injunction outweigh the legal right of the party who instituted the foreign action. See Annot., 6 A.L.R.2d 896, 900 (1949).

The trial court granted Skyline's motion, enjoining Chrysler from proceeding with the Michigan litigation, on the basis that Chrysler's conduct undermined the court's jurisdiction to determine matters which were pending before the court. In ruling on the matter, the trial court stated that it was relying on its "inherent au-

thority" to protect its proceedings and the litigants before it "from multiple lawsuits on the same issues."

Skyline contends that Chrysler's conduct evidences its effort to circumvent the jurisdiction of Illinois courts. According to Skyline, Chrysler invoked the jurisdiction of Illinois courts by filing the third-party action against Skyline and requested the trial court render substantive rulings on the merits of the litigation, but once the trial court entered unfavorable rulings, Chrysler filed the Michigan action. Skyline further asserts that Chrysler's Michigan action alleges the same theories of recovery which the Illinois court considered and rejected, and raises a choice-of-law issue which the Illinois court had already determined (that Illinois law governed the parties' rights under their purchase agreement). Skyline argues that, consequently, manifest wrong and gross injustice results not only to Skyline, but to all Illinois trial courts.

In *Royal League*, an Illinois resident threatened to institute a foreign action in Missouri against another Illinois citizen because the foreign law governing suicide bylaws was more favorable. This court stated:

"It is not enough that there may be reason to anticipate a difference of opinion between the two courts, and that the courts of the foreign State would arrive at a judgment different from the decisions of the courts in the State of the residence of the parties. [Citation.] It is not inequitable for a party to prosecute a legal demand against another in any forum that will take legal jurisdiction of the case, merely because that forum will afford him a better remedy than that of his domicile. To justify equitable interposition it must be made to appear that an equitable right will otherwise be denied the party seeking relief." *Royal League*, 233 Ill. at 183.

In *Prentiss*, an Illinois resident filed an action in Illinois against an Illinois corporation to recover benefits under an insurance policy and then threatened to file a

second action in Missouri to take advantage of more favorable procedural law concerning trial by jury. This court held that there was no deprivation of a substantive right resulting in wrong or oppression simply because the corporation would not be entitled to the same procedure in Missouri as it was afforded in Illinois. This court further stated:

> "A party has the legal right to bring his action in any court which has jurisdiction of the subject matter and which can obtain jurisdiction of the parties. ***
>
> *** The bare fact that a suit on this policy has been begun and is now pending in this State, in the absence of equitable considerations, furnishes no ground to enjoin [a party] from suing his claim in a foreign jurisdiction, although the cause of action is the same ***. *** That it may be inconvenient for [a party] to go to a foreign State to try [an action], or that the maintenance of two suits will cause double litigation and added expense, is insufficient cause for an injunction ***." (*Prentiss*, 277 Ill. at 387-88.)

Thus, *Royal League* and *Prentiss* demonstrate a strong policy against enjoining the prosecution of a foreign action merely because of inconvenience or simultaneous, duplicative litigation, or where a litigant simply wishes to avail himself of more favorable law.

The *Prentiss* decision allowed, however, that the prosecution of foreign actions may be enjoined where such actions are brought to avoid or defeat the operation of the laws of the State where both parties to the suit reside. (*Prentiss*, 277 Ill. at 391.) As examples, *Prentiss* referred to cases which were brought for the purpose of evading local exemption laws or to secure preferences over other creditors under the foreign jurisdiction's law. (*Prentiss*, 277 Ill. at 391.) Skyline argues that *Prentiss* thereby supports Skyline's position because the holding in *Prentiss* is limited to instances where a party loses merely the benefit of advantageous

procedural law by proceeding with the foreign action. Skyline contends that, in contrast here, Chrysler has sought to evade not merely procedural law, but the very jurisdiction of the trial court.

At the outset, we must consider the status of the indemnity and breach of contract counts which were stricken and dismissed without prejudice from Chrysler's original third-party complaint. Chrysler filed an amended third-party complaint fully incorporating these claims, but then filed a second-amended complaint which alleged only contribution causes and did not plead over the indemnity and breach of contract claims. Skyline did not object to the filing of Chrysler's second-amended complaint or move for entry of a final order of dismissal as to the stricken pleadings. See Ill. Rev. Stat. 1987, ch. 110, par. 2—615(d); see also *Doner v. Phoenix Joint Stock Land Bank* (1942), 381 Ill. 106, 108-09 (final order of dismissal may be entered after entry of order sustaining motion to strike and dismiss); *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344 (final order dismissing indemnity counts is appealable, despite the survival of other counts which are separately based on distinct theories of recovery).

Illinois courts adhere to the well-established principle that where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn. (*Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 272.) Allegations in a former complaint, not incorporated in the final amended complaint, are deemed waived; when a party files such an amended complaint, he thereby waives any objection to the trial court's ruling on the former complaint. See *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 153, citing *Bowman*, 29 Ill. 2d at 272.

In the present case, Chrysler abandoned and withdrew its original complaint, alleging, *inter alia*, indemnification and breach of contract, when it failed to incorporate those allegations in its second-amended third-party complaint. Thus, the former allegations of indemnification and breach of contract were waived; and Chrysler waived objection to the trial court's ruling striking and dismissing those causes of action. Thus, contrary to the view of the trial court, these claims were not "under litigation here as to whether [Chrysler had] a valid claim or not." The trial court simply cannot protect its jurisdiction to decide matters which Chrysler has conceded were appropriately stricken and dismissed.

Nonetheless, Skyline contends that the trial court made "substantive rulings on the merits," which "Chrysler requested," by striking and dismissing the indemnity and breach of contract counts. We do not agree. The trial court's ruling was evidenced by an order, striking and dismissing the claims which stated that the ruling was "without prejudice" and granted leave to amend. The order was not final, as amendment was possible (see *Stutzke v. Edwards* (1978), 58 Ill. App. 3d 832; *Commercial National Bank v. Northwest Bank* (1984), 128 Ill. App. 3d 1050), and its language reflects that the trial court's ruling striking and dismissing the indemnity and breach of contract counts was not an adjudication on the merits. (See 134 Ill. 2d R. 273 (an involuntary dismissal, with certain exceptions, operates as an adjudication on the merits, *unless* order of dismissal "otherwise specifies").) Significantly, the record reflects that the trial court stated several times that its order was not final and, thus, rejected Skyline's collateral estoppel argument. The trial court declined as well from making a Rule 304(a) finding as to the order's appealability.

We recognize, as pointed out by the dissent, that substance rather than form may determine whether a gen-

eral order of dismissal represents a final adjudication. (See *St. Joseph Data Service, Inc. v. Thomas Jefferson Life* (1979), 73 Ill. App. 3d 935; *O'Fallon Development Company, Inc. v. City of O'Fallon* (1976), 43 Ill. App. 3d 348.) However, we decline to engage in any interpretation of an order which so affirmatively indicates on its face that a final adjudication was not made. (See *Flores v. Dugan* (1982), 91 Ill. 2d 108, 114 (holding that inclusion in an order of the phrase "without prejudice" clearly manifests the intent of the trial court that its order not be considered final and appealable); see also *Renzuli v. Zoning Board of Appeals* (1988), 176 Ill. App. 3d 661, 663 (holding that an order is nonappealable "on its face" because of the recitation of "without prejudice"); *J. Eck & Son v. R.H. Donnelly Corp.* (1989), 188 Ill. App. 3d 1090; *O'Hara v. State Farm Mutual Auto Insurance Co.* (1985), 137 Ill. App. 3d 131.) This is not a case where certain "magic words" indicative of a final decision on the merits were not included in a dismissal order such that it becomes necessary to look to the substance of the order. (See *McMann v. Pucinski* (1991), 218 Ill. App. 3d 101, 106.) To do so, under these circumstances, would significantly undermine the clarity and uniformity achieved by Rule 273(a) in this area of the law.

Accordingly, there was nothing to prevent Chrysler from proceeding elsewhere as though the stricken and dismissed actions had never been commenced. (See *Gilbert v. Braniff International Corp.* (7th Cir. 1978), 579 F.2d 411 (holding that State court dismissal granting leave to amend was not a final order which precluded plaintiff from adjudicating the dismissed claims later in Federal court); 46 Am. Jur. 2d *Judgments* §484 (1969); see also *Baley v. Tonti* (1988), 174 Ill. App. 3d 828 (plaintiff refiled complaint in another jurisdiction, although complaint was previously stricken with leave to

amend and then abandoned).) The jurisdiction of the trial court was not evaded simply because Chrysler chose to refile actions elsewhere which the court had stricken and dismissed without prejudice and with leave to amend. Even assuming, however, that dismissal of the indemnity and breach of contract counts constituted a final order, we would hesitate to recognize a right to injunctive relief since, under such circumstances, Skyline would then possess an adequate remedy by virtue of either principles of *res judicata* or in reliance on the full faith and credit provision of the Federal Constitution (U.S. Const., art. IV, §1).

Moreover, by filing in Michigan, Chrysler has not necessarily gained the benefit of more favorable substantive law. With the exception of a claim based on breach of contract for the failure to procure insurance, the Michigan complaint seeks a recovery and judgment based on contractual indemnification. Michigan Compiled Laws §691.991 (1987), titled "Void Construction Contracts," provides that agreements to indemnify for liability for damages resulting from one's sole negligence is against public policy, void and unenforceable. Michigan's law is quite similar in scope and purpose to the Illinois Construction Contract Indemnification for Negligence Act (Ill. Rev. Stat. 1987, ch. 29, par. 61), on which the trial court relied to dismiss Chrysler's contractual indemnity counts. Both Acts were intended to arrest efforts to contractually avoid liability for negligence. (See *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494; *Sentry Insurance Co. v. National Steel Corp.* (1985), 147 Mich. App. 214, 382 N.W.2d 753.) We do not find that Chrysler's conduct falls within that class of cases identified by *Prentiss* as avoiding or defeating local law or jurisdiction.

Skyline, however, relies on *James v. Grand Trunk Western R.R. Co.* (1958), 14 Ill. 2d 356, as further sup-

port for its position that injunctive relief is necessary to prevent the circumvention of Illinois courts' jurisdiction. Skyline points to the statement in *James* that a court which first obtained jurisdiction over the merits of a cause should be permitted to retain jurisdiction until final adjudication without interference from courts of other States. (*James*, 14 Ill. 2d at 366.) We find *James* to be distinguishable from the instant case on this point. In *James*, the Illinois court's jurisdiction over the pending matter was subject to actual defeat if the foreign *injunction* were enforced. By contrast, in the instant case, the jurisdiction which the trial court sought to protect concerned causes of action which had been stricken and dismissed, and then subsequently abandoned and withdrawn. Even assuming that the trial court retained jurisdiction to decide those matters, its jurisdiction was not threatened with defeat by a foreign *injunction*.

Skyline fails to recognize that the mere pendency of the Michigan *in personam* proceeding did not threaten the jurisdiction of the Illinois trial court; jurisdiction merely became concurrent. (See *Kline v. Burke Construction Co.* (1922), 260 U.S. 226, 67 L. Ed. 226, 43 S. Ct. 79 (*in personam* subject matter jurisdiction over an issue not threatened by the existence of another action for the same cause in another jurisdiction); *Black & Decker Corp. v. Sanyei American Corp.* (N.D. Ill. 1986), 650 F. Supp. 406 (parallel *in personam* proceedings should ordinarily be allowed to proceed simultaneously); see also *American Re-Insurance Co. v. MGIC Investment Corp.*, 73 Ill. App. 3d 316; *Chicago & Eastern R.R. Co. v. Reserve Insurance Co.*, 59 Ill. App. 3d 206 (where an Illinois court and a sister State court exercised concurrent jurisdiction over the same matter).) We are reminded that a party possesses a general right "to press his action in any jurisdiction which he may see fit and in as many of them as he chooses"; a court of equity will

not interfere with that right unless such prosecution results in fraud, gross wrong or oppression. *Prentiss*, 277 Ill. at 387.

Skyline's authorities condemning "judge shopping" and forum shopping (*Balciunas v. Duff* (1983), 94 Ill. 2d 176; *Contreras v. Citibank* (1990), 198 Ill. App. 3d 1059) do not persuade us. In *Contreras*, plaintiffs filed a class action in the chancery division of the Cook County circuit court, seeking to collaterally attack default judgments rendered by the municipal department, although the plaintiffs had entered into settlement agreements and abandoned their defenses to those judgments under sections 2—1301(e), 2—1401 (vacation of judgments), and section 2—301 (special appearance contesting personal jurisdiction) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, pars. 2—1301(e), 2—1401, 2—301). The appellate court determined that the requirements of the Code of Civil Procedure could not be circumvented by collateral attack, and characterized the plaintiffs' conduct as forum shopping. In *Balciunas*, this court expressed its disapproval of parties' appearing on a motion before one judge in the attempt to gain entry of a more favorable order than that previously entered by another judge. We believe that the procedural posture of the present case is significantly distinguishable from *Contreras* or *Balciunas* to justify our rejection of those cases as persuasive authority here.

In our view, Chrysler has not avoided or defeated the laws of Illinois so as to require equitable interposition. Chrysler's filing of claims in Michigan, which had been stricken and dismissed without prejudice by a nonfinal order in Illinois, does not represent an avoidance of the jurisdiction of the Illinois trial court nor a circumvention of its ruling. We do not agree with Skyline's blanket statement that "[w]hen a party files a foreign action after receiving an unfavorable ruling, that party avoids

and rejects the court's jurisdiction simply because the court did not do what the party wanted." Our position is not changed by the fact that by refiling in Michigan, Chrysler may benefit from a liberal interpretation by a Michigan court of Michigan's law voiding construction-related contractual indemnity agreements. Skyline had the opportunity in Illinois both to object to Chrysler's second-amended complaint and to request entry of a final judgment as to the causes which were stricken and dismissed. In the absence of such action at law by Skyline, the trial court could not fairly rely on its equitable authority to protect Skyline or its own subject matter jurisdiction. Equitable considerations in favor of granting the injunction simply do not outweigh the legal right of Chrysler to proceed in Michigan. While the trial court recognized that Chrysler may have gained by Skyline's failure to act, that gain alone does not mean that Skyline has suffered a manifest wrong and injustice as interpreted by Illinois courts. Chrysler's proceeding in Michigan does not result in a fraud or gross wrong or oppression justifying equitable interposition by the trial court.

Neither ought we invoke equity to render a final judgment as to the dismissed and stricken claims and consequently uphold the injunction under principles of collateral estoppel, as the dissent requests. Skyline did not move for final judgment and the trial court expressly and affirmatively rejected finality as well as any consequent applicability of collateral estoppel as the basis for its grant of the injunction. Based on this record, we cannot conclude that a final judgment should have been entered or that equitable considerations favor doing so now.

Accordingly, we conclude that the trial court erred by enjoining Chrysler from proceeding with the Michigan action.

## DAIWA BANK

### Facts

A joint venture, Lakes of Dundee Development Venture, was formed between Coventry Development Associates Chicago, Ltd. (Coventry), and Lakes of Dundee Development Corporation to develop a 44-acre apartment complex in Carpentersville, Kane County, Illinois. Defendant Monzer Hourani is the president of Lakes of Dundee Development Corporation. Daiwa Bank agreed to provide $9.95 million in construction financing for the project.

The loan agreement was secured by: (1) a note signed by the joint venture, the beneficial owner of the property, and La Salle National Trust, which holds title to the property as trustee; (2) a mortgage; (3) a guaranty signed by the Hourani defendants; and (4) an indemnity agreement signed by the joint venture and the Hourani defendants. All of the documents were executed on July 3, 1990, and all provided that Illinois law governed the terms. Daiwa had disbursed $670,631 of the loan proceeds by July 17, 1990.

The loan documents warranted and represented that as of July 3, 1990, no actions or suits were pending against the joint venture or any guarantor which might materially adversely affect their financial condition or ability to perform their obligations to Daiwa. On August 2, 1990, Daiwa learned that the Resolution Trust Corporation had filed a $7.5 million suit against Monzer Hourani in the Federal district court of Texas (the RTC litigation). The suit alleged that Hourani was the guarantor on a defaulted loan made by a defunct savings and loan.

On August 9, 1990, Daiwa filed the present mortgage foreclosure action in the circuit court of Kane County.

The complaint seeks foreclosure of the mortgage and damages against all the defendants for breach of contract. The complaint also seeks damages from the joint venture and Monzer Hourani because of their alleged fraud in failing to disclose the RTC litigation and Hourani's financial condition. Daiwa is a foreign corporation doing business in, among other States, Illinois and Texas; Monzer Hourani and all defendant entities, with the exception of one Hourani defendant, are Texas citizens.

On September 15, 1990, the Hourani defendants, the joint venture, and a number of other real estate development entities (Texas plaintiffs) filed an action in the State district court of Harris County, Texas, against Daiwa, Coventry, and two Coventry-related entities. The Texas complaint alleged that Daiwa had breached the loan agreement by failing to fund and failing to allow an opportunity to cure the claimed breach. With respect to both Daiwa and Coventry, the complaint alleged fraud throughout the negotiation of the loan agreement by Daiwa and Coventry, to the extent that the Hourani defendants' interests in three joint ventures (the joint venture's project in Illinois, a project in Minnesota and a project in Texas) were compromised, and coercion of plaintiffs under threat of economic duress in the signing of the loan agreement. As against Coventry alone, the complaint alleged breach of a fiduciary duty and breach of a duty of fair dealing because of the alleged conspiracy with Daiwa, fraud and coercion. The complaint sought recovery of compensatory and punitive damages. Trial was scheduled for December 17, 1990.

On September 28, 1990, the Hourani defendants answered the Kane County action, and also asserted as affirmative defenses many of the allegations made by the plaintiffs in the Texas litigation (Daiwa's alleged breach for failure to permit an opportunity to cure; Daiwa's

knowledge of litigation pending against Monzer Hourani prior to execution of those agreements thereby constituting waiver; and Daiwa's assertion of breach so as to avoid the contract).

On October 2, 1990, Coventry attempted to intervene in the Kane County litigation by answering and presenting a counterclaim against the Hourani defendants, arising out of the joint venture agreements. On October 9, 1990, the Texas court enjoined Coventry from intervening in the Kane County suit and entered a separate order which designated a Hourani defendant as the managing venturer for purposes of defending the joint venture in the Kane County litigation. Those orders do not affect our decision here.

On October 10, 1990, the trial court heard arguments on a motion by Daiwa which sought to permanently enjoin the Hourani defendants from proceeding against Daiwa in the Texas litigation or elsewhere. The trial court found that full and complete relief could best be provided by Illinois courts, that Illinois had jurisdiction over the dispute prior to Texas, that as between "the parties to *this* court" (emphasis in original), the same subject matter was involved in both lawsuits, and that Daiwa would suffer injustice and irreparable harm were the defendants allowed to proceed in Texas. The trial court consequently enjoined the Hourani defendants from proceeding against Daiwa in Texas or elsewhere. The injunction did not, however, prevent the Hourani defendants from proceeding against Coventry in Texas, nor did it prevent plaintiffs in the Texas litigation, other than the Hourani defendants, from proceeding against Daiwa. The Hourani defendants, however, settled their claims against Coventry on the eve of the Texas trial date.

The Hourani defendants subsequently appealed the trial court's grant of injunction. The appellate court re-

versed. Daiwa petitioned for leave to appeal to this court. The Hourani defendants moved to dismiss the petition on grounds that the cause was rendered moot because the trial court had dismissed the complaint. On August 8, 1991, we denied the motion to dismiss the petition. We later granted the petition and consolidated the appeal with that of Skyline.

## The Hourani Defendants' Pending Motion to Dismiss Daiwa's Appeal

The Hourani defendants then filed a motion to dismiss the appeal and suspend the briefing schedule (134 Ill. 2d R. 361) based on the dismissal of the underlying complaint by the trial court on July 30, 1991, and Daiwa's removal of the Texas litigation on September 13, 1991, to the United States District Court for the Southern District of Texas. We take judicial notice of a January 21, 1992, order issued by the Texas Federal court, which remanded the Texas litigation to the Texas State district court. We also take judicial notice of the recent Illinois appellate decision, *Daiwa Bank, Ltd. v. La Salle National Trust, N.A.* (1992), 229 Ill. App. 3d 366, which reversed the trial court's order dismissing the complaint. Accordingly, the motion to dismiss Daiwa's appeal has been denied.

## Discussion

Daiwa contends that the trial court properly exercised its discretion in restraining the Hourani defendants from prosecuting their Texas action because the Illinois action was filed first and complete relief was best afforded to the parties in Illinois. Daiwa relies on *Wells v. Wells* (1976), 36 Ill. App. 3d 91, 93, which stated that "where complete relief can be had where litigation is pending, the institution of foreign proceedings will be regarded 'as vexatious harassing of the opposite party.' "

Daiwa further maintains that the injunction was necessary, even under the *Royal League* standard, to protect the trial court's jurisdiction over the matter in light of the Hourani defendants' "rush to judgment" in Texas. Daiwa's argument is premised upon its view that the Hourani defendants' Texas claims against Daiwa essentially comprise its defenses in Illinois. Daiwa asserts that the Hourani defendants' Texas claims against Daiwa are separate from the Hourani defendants' claims against Coventry in that action.

The Hourani defendants argue that an injunction is not warranted under these facts so as to prevent any fraud or gross wrong or oppression. (See *Royal League*, 233 Ill. at 183.) Defendants contend that neither multiple lawsuits nor the possibility of inconsistent adjudications can suffice as the basis to enjoin them. Furthermore, even assuming that that fact is determinative of the issue, defendants contend that complete relief cannot be afforded the parties in the Illinois action, as demonstrated by *National Hockey League v. Intermart, Inc.* (1984), 127 Ill. App. 3d 1072. The Hourani defendants' position is premised upon their view that the Hourani defendants' Texas claims are separate from the Illinois litigation.

The trial court's findings indicate that it employed a truncated analysis: Illinois acquired jurisdiction first; Illinois courts could best afford complete relief to the parties; and the two pending matters were the same. As we have stated, while such considerations are appropriate, they are not the sum total of the analysis which a court must employ. *Wells*, 36 Ill. App. 3d at 93, amply demonstrates this point.

Consequently, we first consider whether the permanent injunction was necessary to prevent fraud or gross wrong or oppression. (See *Royal League*, 233 Ill. at 183.) Daiwa contends that an injunction was necessary to pro-

tect the trial court's jurisdiction. Daiwa relies on *PSL Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 307, as demonstrating that in an *in rem* proceeding, such as the mortgage foreclosure action here, an injunction is appropriate to protect the court's jurisdiction over the property, mortgage and notes, which jurisdiction must be exercised to the exclusion of other courts.

*PSL Realty Co.* is readily distinguishable from the instant case. *PSL Realty Co.* recognized that a Federal court which exercised prior *in rem* jurisdiction over the mortgage foreclosure action and enjoined our appellate court from proceeding with a related receivership action was entitled to maintain and exercise its jurisdiction to the exclusion of other courts. This court, accordingly, voided many of the orders issued by the appellate court which interfered with the Federal court's jurisdiction. Recognition of the Federal court's jurisdiction was extended, however, because of the established principle that as between a prior Federal and subsequent State court action, both exercising *in rem* jurisdiction, the court which first acquires jurisdiction has exclusive jurisdiction. (See *Mandeville v. Canterbury* (1943), 318 U.S. 47, 48-49, 87 L. Ed. 605, 607, 63 S. Ct. 472, 473; see generally 14 Ill. L. & Prac. *Courts* §261 (1968).) *PSL Realty Co.* does not support the view that a State court's first-acquired *in rem* jurisdiction is exclusive as between States and that an injunction is necessary to protect that jurisdiction. To that extent, we reject *PSL Realty Co.* as persuasive authority in this context.

In the present case, the trial court's jurisdiction over the mortgage foreclosure action, which included allegations of fraud and breach of contract, was not interfered with or threatened by the *in personam* proceeding in Texas. (*Cf. Carey v. Neal, Cortina & Associates* (1991), 216 Ill. App. 3d 51 (exercise of *in rem* and *in personam* jurisdiction over a mortgage foreclosure action and a re-

lated tort action by two State courts).) The Illinois action seeks to determine legal rights to the property and liability on the loan agreements, and requests damages and rescission. The Texas action seeks a personal judgment against Daiwa and Coventry and damages arising out of a fraudulent scheme, which Daiwa and Coventry allegedly perpetrated in securing the loan agreements. We conclude that the subject matter jurisdiction of the Texas court does not preclude or arrest the jurisdiction of the Illinois court; defendants' Texas claims do not affect title to the Kane County property, nor do they prevent the Illinois court from adjudicating rights to the property and any obligations under the notes and mortgage. (*Cf. Black & Decker Corp. v. Sanyei American Corp.* (N.D. Ill. 1986), 650 F. Supp. 406, 408 (while courts have power to enjoin persons from prosecuting suit in foreign jurisdiction, a fundamental corollary to concurrent jurisdiction must be respected: parallel proceedings on same *in personam* claims should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached and *res judicata* can be pled); *Light v. Light* (1957), 12 Ill. 2d 502, 512 (pendency of Missouri post-divorce petition did not oust jurisdiction of Illinois court to register the Missouri divorce decree).) Furthermore, any possible inconsistency in rulings or judgments may be rectified by resort to principles of *collateral estoppel* and *res judicata.*

The record also does not reflect that the Texas proceedings unduly burdened or inconvenienced Daiwa, beyond that which is usual to simultaneous interstate proceedings. Mere inconvenience and the expense of defending the Texas action do not constitute a manifest wrong or injustice adequate to justify an injunction. (See *James,* 14 Ill. 2d at 363; *Wells,* 36 Ill. App. 3d at 93.) Neither does the prospect of a second, possibly duplicative proceeding suffice as a basis to enjoin the Hourani defendants. See *Prentiss,* 277 Ill. at 388.

Consideration must also be given to whether complete relief can be afforded the parties in Illinois such that the Texas litigation could be regarded as vexatious and harassing. While we agree with Daiwa that the Hourani defendants' Texas claims essentially comprise their affirmative defenses in the Illinois litigation, we do not believe that those defenses and claims are coextensive; the Hourani defendants' Texas claims against Daiwa are broader. In the Texas litigation, the Hourani defendants seek compensatory and punitive damages from Daiwa for fraudulent misrepresentation with respect to the Hourani defendants' interests in three joint ventures, none of which is at issue in Illinois. The common issue in the two actions may well be the nature of the alleged loan agreement default; however, the Texas action also concerns the damaging effect of that default, allegedly orchestrated by Daiwa and Coventry, upon the Hourani defendants' three joint ventures with Coventry. Neither the Hourani defendants nor the other Texas plaintiffs therefore could be afforded complete relief in the Illinois mortgage foreclosure action. That Daiwa might only have complete relief in Illinois because the *res* is located here is beside the point. We take judicial notice of the fact that the entirety of the Texas plaintiffs' claims against Coventry have been dismissed. (See *Daiwa Bank, Ltd. v. La Salle National Trust, N.A.* (1992), 229 Ill. App. 3d 366.) However, that fact does not alter our decision that the Hourani defendants' pending Texas claims against Daiwa are not susceptible to complete relief in the Illinois court. See *National Hockey League v. Intermart, Inc.* (1984), 127 Ill. App. 3d 1072, 1078 (complete relief could not be had where foreign action was against defendants who were not parties to the Illinois action); *Catherwood v. Hokanson*, 201 Ill. App. at 466 (complete relief not available where foreign action

sought a partition, a form of relief not obtainable in that case in Illinois).

Lastly, even though relief could not be afforded all parties in Illinois, the record does not reveal the Texas litigation to be vexatious and harassing as those terms are commonly interpreted. (See 42 Am. Jur. 2d *Injunctions* §221 (1969).) In sum, we are not presented with a record which reflects that the trial court's discretionary decision enjoining the Hourani defendants was warranted. See *Tabor & Co. v. McNall* (1975), 30 Ill. App. 3d 593, 596.

Accordingly, in cause No. 71813 (Skyline) we affirm the appellate court judgment, which reversed the order of injunction entered by the circuit court.

In cause No. 71815 (Daiwa), we affirm the judgment of the appellate court, which reversed the grant of permanent injunction by the circuit court.

No. 71813—*Affirmed.*
No. 71815—*Affirmed.*

JUSTICE BILANDIC, concurring in part and dissenting in part:

I concur in that portion of the majority opinion which establishes a single standard for enjoining the prosecution of a foreign cause of action. I also concur in the majority's holding in the Daiwa Bank appeal. I believe, however, that this court should not countenance the behavior of Chrysler Corporation (Chrysler) in the Skyline appeal. Because the majority's decision in the Skyline appeal enables a litigant to circumvent substantive rulings by an Illinois trial court, I respectfully dissent from that portion of the majority's decision.

The circumstances of the Skyline appeal are as follows. The initial plaintiff, Pfaff, sued Chrysler in Cook County, Illinois, for an accident which occurred in Belvedere, Illinois. Chrysler moved the Cook County trial

court to transfer the cause to Boone County, Illinois, on *forum non conveniens* grounds. The Cook County trial court granted Chrysler's motion and the cause was transferred to Boone County. After Chrysler succeeded in getting the case to Boone County, Chrysler filed a third-party complaint against Skyline, bringing Skyline before the Boone County trial court. Although, at this time, Chrysler could have filed its complaint in any jurisdiction that it chose (including Michigan), Chrysler chose to bring Skyline to Illinois to defend the allegations in its third-party complaint before the Boone County court. It was only after Skyline prevailed on its motion to dismiss the indemnity counts in Chrysler's complaint that Chrysler decided to bring the same counts against Skyline in a Michigan forum. Chrysler has received an adverse ruling from the Boone County trial court with which it disagrees. Chrysler could have sought review of this adverse ruling from an appellate tribunal of this State. Instead, Chrysler chose to start anew in Michigan. By allowing Chrysler to pursue this course of action, the majority allows a Michigan trial court to sit in review of the Illinois trial court's rulings. Clearly, this is not proper. Once a litigant has received an adverse ruling from an Illinois trial court, this court should not allow that litigant to relitigate the same claims in a different forum.

Initially, it is important to note that the trial court's order enjoining Chrysler from prosecuting its Michigan cause of action was an equitable remedy. The instant proceedings in the Skyline appeal are proceedings *in equity*. The primary and overriding goal of equity is to do substantial justice between the parties. (See *Holman v. Gill* (1883), 107 Ill. 467, 477.) Equitable jurisdiction is invoked when legal remedies are inadequate or incapable of doing justice according to equity and good conscience. (See *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill.

2d 350, 358-59; *Royal League v. Kavanagh* (1908), 233 Ill. 175, 183.) A court of equity is therefore duty-bound to look at substance rather than form (*Reese v. Melahn* (1973), 53 Ill. 2d 508, 513; *Ridgely v. Central Pipe Line Co.* (1951), 409 Ill. 46, 53) and to prevent inequities which may result from technicalities (*Daly v. County of Madison* (1941), 378 Ill. 357, 374; see *Holman*, 107 Ill. at 476-77). In order to achieve its goal of doing substantial justice, equity will consider as done that which ought to be done. (*Cesena v. Du Page County* (1991), 145 Ill. 2d 32, 38.) The majority has overlooked these fundamental, equitable maxims in reaching its decision in the Skyline appeal.

In *Royal League v. Kavanagh* (1908), 233 Ill. 175, this court established the standard that Illinois courts must follow in determining the appropriateness of restraining the prosecution of a foreign cause of action. Under the *Royal League* standard, Illinois courts will enjoin the prosecution of a foreign cause of action only if that prosecution would result in fraud, gross wrong, or oppression and the injunction is necessary to prevent manifest wrong, injustice, or the denial of an equitable right. (*Royal League*, 233 Ill. at 183.) Furthermore, if both parties reside in Illinois, as in the instant case, an Illinois court may grant such an injunction if the foreign action was filed to avoid or defeat the operation of Illinois law. (*Illinois Life Insurance Co. v. Prentiss* (1917), 277 Ill. 383, 391.) Although the majority properly determines that the *Royal League* standard governs the instant appeals, its opinion in the Skyline appeal virtually ignores this standard.

Much to my astonishment, the majority has failed to discern that Chrysler has essentially evaded not only the jurisdiction of the Boone County trial court, but also two substantive rulings made by that court which were unfavorable to Chrysler. Chrysler has found a method by

which it can evade the law of Illinois and has obtained this court's approval in the process. Clearly, Chrysler's behavior rises to the level of a gross wrong, results in manifest injustice and denies Skyline substantial equitable rights.

The central and deciding factor which leads the majority to its ultimate holding in the Skyline appeal is its determination that the trial court's dismissal of Chrysler's indemnity counts was not a final order. The majority writes:

> "[The trial court's] language reflects that [its] ruling striking and dismissing the indemnity and breach of contract counts was not an adjudication on the merits. [Citation.] Significantly, the record reflects that *the trial court stated several times that its order was not final* and, thus, rejected Skyline's collateral estoppel argument. ***
>
> We recognize, as pointed out by the dissent, that substance rather than form *may* determine whether a general order of dismissal represents a final adjudication. [Citations.] However, *we decline to engage in any interpretation of an order which so affirmatively indicates on its face that a final adjudication was not made.* [Citations.] This is not a case where certain 'magic words' indicative of a final decision on the merits were not included in a dismissal order *such that it becomes necessary to look to the substance of the order.* [Citation.] To do so, under these circumstances, would significantly undermine the clarity and uniformity achieved by Rule 273(a) in this area of the law.
>
> Accordingly, there was nothing to prevent Chrysler from proceeding elsewhere as though the stricken and dismissed actions had never been commenced. [Citations.]" (Emphasis added.) (155 Ill. 2d at 62-63.)

The majority's erroneous analysis of this issue regarding finality misstates well-established Illinois law. Therefore, its conclusion, based on its mistaken analysis, that the Boone County trial court's order is nonfinal is equally erroneous.

This court has stated numerous times that it is not the form of the order which determines whether it is a final or nonfinal order. (See, *e.g., Altschuler v. Altschuler* (1948), 399 Ill. 559, 570; *Brauer Machine & Supply Co. v. Parkhill Truck Co.* (1943), 383 Ill. 569, 577-78.) On numerous occasions, this court has rejected the trial court's denomination of the order at issue. Instead, this court has repeatedly emphasized that it is the substance of the order which is determinative. (See, *e.g., Mills v. Ehler* (1950), 407 Ill. 602, 610; *Altschuler*, 399 Ill. at 570.) In *Altschuler*, 399 Ill. at 570, this court wrote:

"It is not the form of the decree, but the substance and effect of the adjudication which is determinative. A decree, *notwithstanding it may be denominated interlocutory and direct further proceedings,* may so completely adjudicate the rights of the parties as to constitute a final and appealable order. *Groves v. Farmers State Bank*, 368 Ill. 35." (Emphasis added.)

It is well-established Illinois law that an order is final if it "finally disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate branch thereof." (*Altschuler*, 399 Ill. at 569.) This is so even though substantial matters in the controversy remain pending in the trial court. (*Roddy v. Armitage-Hamlin Corp.* (1948), 401 Ill. 605, 610.) The question of finality must always be considered with respect to the particular facts and circumstances of each case. *Roddy*, 401 Ill. at 610.

Contrary to the above-cited rules of Illinois law, the majority has, in essence, determined that the Boone County trial court's dismissal of Chrysler's indemnity counts was nonfinal because the trial court said so. Apparently, the majority has determined that, if the form of the order is clear on its face, that form controls the issue regarding finality. The majority indicates its mistaken belief that the substance of the order need not be

examined unless the form of the order is unclear. In that case, the majority asserts that the substance of the order *may* be examined to determine whether the order is final. The majority's analysis in the case *sub judice* has turned established law on its head. Examination of the order's substance is not a discretionary matter, dependent upon the clarity of the order's form. The form of the order and the trial court's denomination do not control the question of whether the order is final or nonfinal. Rather, it is the substance of the order which controls the question of whether it is a final or nonfinal order.

In the instant case, the Boone County trial court substantively ruled that Chrysler's indemnity counts were invalid in Illinois pursuant to the Construction Contract Indemnification for Negligence Act (Ill. Rev. Stat. 1987, ch. 29, par. 61). The trial court also made a choice-of-law ruling, holding that Illinois law would govern these counts pursuant to *Donaldson v. Fluor Engineers, Inc.* (1988), 169 Ill. App. 3d 759. These two substantive rulings were final adjudications as to separate branches of the litigation between the parties. With respect to the dismissal of the indemnity counts, no amendment could make the indemnity counts valid in Illinois. In substance, the facts indicate that the order was a final adjudication as to the rights of the parties with respect to Chrysler's indemnity counts. The Boone County trial court's rulings were crucial to Skyline and Skyline had a substantial equitable right to rely on these rulings made *pursuant to Illinois law*. Although the trial court's dismissal order, in form, gave Chrysler leave to amend, that order was, in substance, an adjudication on the merits of Chrysler's indemnity counts. The appellate court properly recognized this fact when it stated:

> "We undertake our analysis agreeing with Skyline's statement that, under the circumstances, the trial court's

dismissal of Chrysler's indemnity claims constitutes a *substantive ruling on the merits.* We note that, although Chrysler's entire third-party complaint was dismissed without prejudice to refiling an amended pleading, *the trial court made it clear that the indemnity counts did not and could not state a cause of action* and should be referenced in any new third-party complaint *merely to preserve Chrysler's right to appeal the ruling.* [Citation.] Chrysler's failure to include the indemnity counts in its second amended third-party complaint potentially bars only its right to appeal the dismissal of these counts *but does not alter the fact that the trial court ruled on the merits of these counts.*" (Emphasis added.) 208 Ill. App. 3d at 916.

The appellate court properly looked to the substance of the Boone County trial court's order rather than the technical form of the order. This court should likewise recognize that, even though the order was technically a nonfinal order, it ought to have been entered as a final order with respect to the indemnity counts. It is axiomatic that this court has the power to enter a final judgment that the record reveals should have been entered. (*Cesena,* 145 Ill. 2d at 38.) As this court has stated:

"Equity *** will disregard mere technical objections that do not affect the merits of the controversy, and which might readily be removed if the attention of the opposite party, or of the court, had been called to them." (*Holman,* 107 Ill. at 474.)

Under equitable principles, the majority should have concluded that the order was a final order with respect to Chrysler's indemnity counts irrespective of its technical form. Therefore, under principles of collateral estoppel, the majority should have upheld the trial court's order permanently enjoining Chrysler from relitigating these counts in Michigan. Instead, the majority's decision improperly allows Chrysler to circumvent the trial court's

substantive rulings and to pursue the same claims in Michigan.

This case is fundamentally distinguishable from the prior decisions of this court which denied a litigant's motion for an injunction to enjoin the prosecution of a foreign cause of action. (See *Prentiss*, 277 Ill. 383; *Royal League*, 233 Ill. 175.) In *Royal League*, the plaintiff-insurer requested that this court enjoin the defendant-insured from bringing her cause of action against the insurer in a Missouri court. At the time that the insurer filed its complaint in Illinois for injunctive relief, however, the insured had not yet brought a cause of action against the insurer to collect on the insurance policy. Rather, the insurer was simply attempting to force the insured to bring her cause of action in Illinois because it wanted Illinois law to apply to the insured's cause of action to collect on the insurance policy. This court held that the insurer could not invoke the equitable jurisdiction of an Illinois court to force a litigant to choose an Illinois forum. (*Royal League*, 233 Ill. at 184.) It was under these circumstances that this court wrote:

> "A person has the right to select such tribunal having jurisdiction as he chooses for the prosecution of his rights, and the court which first obtains jurisdiction will retain it. Such jurisdiction cannot be defeated because the defendant may prefer another tribunal in which he supposes the decision will be more favorable to him." *Royal League*, 233 Ill. at 183-84.

In *Prentiss*, the insured initially brought an action against the insurer in Illinois. While this action was pending in Illinois, the insured threatened to bring another lawsuit against the insurer in Missouri. The insurer then sought an injunction from an Illinois court to enjoin the insured from filing the second action in Missouri. This court held that the maintenance of lawsuits in both the Illinois and Missouri courts was not enough to

justify enjoining the prosecution of the Missouri lawsuit. (*Prentiss*, 277 Ill. at 387-88.) This court wrote:

> "[I]t is only where it clearly appears that the prosecution of an action in a foreign state will result in a fraud, gross wrong or oppression, that a court of equity will interfere with the general right of a party to press his action in any jurisdiction which he may see fit and in as many of them as he chooses and restrain him from the prosecution of such a suit." (*Prentiss*, 277 Ill. at 387.)

The *Prentiss* court found that neither the inconvenience and added expense of multiple lawsuits nor the possibility of a more favorable judgment was sufficient to justify granting the injunction sought by the insurer. *Prentiss*, 277 Ill. at 387-88, 391.

The instant case does not involve a litigant's right to initially choose a forum, as in *Royal League*. Here, Chrysler had already exercised the privilege of voluntarily choosing its forum, the same privilege afforded to the insured in *Royal League*. It just so happens that the initial forum that Chrysler chose ruled against it. Nor does this case involve a litigant's right to choose forums with concurrent jurisdiction and maintain multiple, *pending* lawsuits, as in *Prentiss*. Rather, in the case at bar, *Chrysler* originally initiated its complaint against Skyline in an Illinois forum. The Illinois court then ruled adversely to Chrysler on the choice-of-law issue and on the validity of Chrysler's indemnity counts. Thereafter, Chrysler filed the *same counts* before the Michigan court in an obvious attempt to circumvent these two adverse rulings made in Illinois and to evade the Illinois law upon which these adverse rulings were based. Looking to the substance of the Boone County trial court's order, Chrysler's indemnity counts have already been finally disposed of and are no longer pending, unlike the actions at issue in *Prentiss*. Significantly, in the case before us, Skyline does not seek relief from the inconvenience and

expense of defending multiple lawsuits. Rather, Skyline seeks to enjoin Chrysler from relitigating claims that have already been resolved in Skyline's favor by an Illinois trial court.

The majority's decision in the instant case reaches beyond the holdings in *Royal League* and *Prentiss* and now extends to a litigant the right to disregard an Illinois trial court's substantive rulings and seek a different ruling from another forum. The majority's conclusion is based on nothing more than the technicality that the trial court's order did not have the word "final" in it. As stated above, the majority should have looked to the *substance of the Boone County trial court's order* as equity requires us to do and should have concluded that the trial court's dismissal was a final adjudication on the merits of Chrysler's indemnity counts. Therefore, the majority should have applied the principles of collateral estoppel and upheld the trial court's grant of an injunction. Only this result could afford substantial justice between the parties and prevent gross wrong and oppression.

Further, the majority's alternative basis for affirming the appellate court is equally at odds with Illinois law. The majority states that, even if the dismissal order were a final order, it would not grant Skyline injunctive relief because Skyline could assert *res judicata* principles in the foreign proceedings. Again, the majority misses the mark. Under *Prentiss*, an injunction is an appropriate means of preventing a party from evading the law of the forum. The law of Illinois, a State in which Chrysler resides, is adverse to Chrysler with respect to indemnity and the Boone County trial court's dismissal of the indemnity counts was made in accordance with Illinois law. The proper focus here is not whether Skyline can succeed on *res judicata* principles in the Michigan forum, but rather whether Chrysler's institution of the

same indemnity counts in Michigan is an attempt to evade Illinois law. Clearly, Chrysler's conduct reveals an attempt to evade this State's law and, under *Prentiss*, an injunction enjoining Chrysler's prosecution of the foreign action is appropriate under these facts.

This is a case where an Illinois trial court has substantively ruled against a litigant. Chrysler could have appealed those rulings to an Illinois appellate tribunal but it chose not to do so. Instead, Chrysler seeks to have a Michigan trial court sit in review of the Boone County trial court's rulings against Chrysler. The majority's approval of Chrysler's conduct denies Skyline its equitable right to rely on the validity of the Boone County trial court's rulings. The majority's holding also visits upon the Boone County trial court, as well as Skyline, a gross wrong and results in oppression of that court's power and authority. It is inconceivable that this court, sitting in equity, could countenance such manifest injustice.

For the foregoing reasons, I respectfully dissent to the majority's decision in the Skyline appeal.

JUSTICE HEIPLE, dissenting:

In reaching its conclusion today, the majority relies for support on unenlightened language from a dated case. In doing so, the majority unnecessarily shackles the discretion of the trial courts to enjoin vexatious suits. Because I feel the issue involved here requires actual analysis rather than mere adherence to an aged precedent, I respectfully dissent.

In the *Skyline* case, Richard Pfaff filed a complaint against Chrysler seeking to recover for personal injuries sustained while working at Chrysler's plant. Chrysler filed a third-party complaint against Skyline, Pfaff's employer, alleging common law indemnity, contractual indemnity, and contribution. The trial court held that Illinois does not recognize actions for common law

indemnity. It also held that the contractual indemnity provisions would be governed by Illinois law rather than Michigan law. The court then concluded that the counts based on contractual indemnification were void under Illinois law and dismissed, striking the indemnification counts without prejudice and with leave to amend. Chrysler subsequently filed suit against Skyline in Michigan seeking recovery under the same indemnity provisions. On Skyline's motion, the trial court issued an order enjoining Chrysler from proceeding with the Michigan action. On appeal, the appellate court reversed finding that to justify enjoining Chrysler, a clear equity must be presented, requiring the interposition of the court to prevent manifest wrong and injustice.

In the Daiwa Bank appeal, Daiwa originally filed a mortgage foreclosure action against the defendants alleging, *inter alia*, that the defendants had breached express representations in the loan agreement and guarantee that there were no actions or suits pending against them which might adversely affect its financial condition or its ability to perform its obligation to Daiwa. Defendants then filed an action in Texas against Daiwa based upon breach of fiduciary duty, breach of good faith, and duress arising from the same transaction. Daiwa responded by filing a motion to enjoin defendants from proceeding against Daiwa in the Texas suit. The trial court entered an order enjoining the defendants from proceeding against Daiwa in the Texas suit or in any other suit involving the same subject matter. On appeal, the appellate court panel found that the proper standard in determining whether to enjoin a party from proceeding with a foreign action, regardless of which action is filed first, is whether the failure to enjoin the foreign action would result in fraud, gross wrong, or oppression.

On appeal to this court, both Skyline and Daiwa argued that where the action in a foreign jurisdiction is in-

stituted after the Illinois action, the court may enjoin a litigant if the foreign action appears "oppressive, vexatious, annoying, harassing, or unduly interfere with the progress of a prior instituted local action." A majority of this court found, however, that regardless of whether the foreign action is filed before or after the Illinois action, an injunction is appropriate "only when prosecution of the foreign action would result in fraud or gross wrong or oppression, or when a clear equity is presented which requires restraint to prevent a manifest wrong and injustice." In so holding, the majority reaffirms the language adopted in *Royal League v. Kavanagh* (1908), 233 Ill. 175, 183—a case decided nearly 90 years ago—without evaluating that court's underlying policy reasons. This, I feel, works a great injustice to the litigants and to society as a whole.

As the majority correctly points out, Illinois courts have the equitable power to restrain a person over whom it has jurisdiction from instituting a suit (*Harris v. Pullman* (1876), 84 Ill. 20, 28) or proceeding with a suit in a foreign State (*James v. Grand Trunk Western R.R. Co.* (1958), 14 Ill. 2d 356, 363). *Royal League v. Kavanagh* (1908), 233 Ill. 175, and its progeny have appropriately tempered this equitable power in taking into consideration concerns of interstate comity. Another factor underlying courts' hesitancy to intervene when it comes to repetitive litigation is the American jurisprudential rule that allows a citizen of any State to go into another State to pursue such remedies as are available there. Thus, in this State, pendency of suit in itself has never been enough to warrant enjoining subsequent foreign litigation.

Although these concerns are valid and appreciable, I feel that in cases such as the ones at hand, numerous policy considerations and recent developments call for a reevaluation of their weight. Put in the proper perspec-

tive, these concerns over comity and the rights of the litigant do not necessarily require courts to continue their gentle treatment of such duplicative litigation. Rather, a proper assessment of the policy concerns will argue toward a relaxing of the rigid rule of law set forth in *Royal League.*

Initially, it should be noted that neither of the appellees in this case were the original plaintiffs. In both these cases, the defendant in the first action—for convenience I shall refer to them as the reactive litigants—has brought an independent action based upon the same factual controversy, against the original plaintiff, while the original plaintiff's action was pending. (See Vestal, *Reactive Litigation,* 47 Iowa L. Rev. 11 (1961) (coining the phrase "reactive litigation").) This is significant because under these circumstances, the policy that plaintiffs be allowed to bring their suit in the jurisdiction of their choice is not as relevant in determining the strictures of an injunction standard. In other words, we are less concerned with these reactive litigants' choice of jurisdiction because by definition they have already been forced into a jurisdiction not of their own choosing. In such a case, a trial court's refusal to enjoin these reactive litigants from pursuing their subsequently filed foreign action cannot give back to them the advantage or right of forum selection.

In fact, by making the grounds for a permanent injunction so difficult to satisfy, this court has made the original plaintiff's right to bring a suit in any appropriate jurisdiction a shadow of a right. What good, indeed, is a rule which enables you to select your battleground but at the same time allows your opponent to drag you across the globe.

A second reason for relaxing the standard in determining whether to enjoin a subsequently filed duplicative foreign suit is judicial economy. The waste involved in allow-

ing the same parties to litigate the same issue seems a ridiculous proposition. The idea that there should be two simultaneous actions pending, both taking up already choked dockets, where one would be *res judicata* to the other, is almost unjustifiable. In these days, where lawyers and the cost of litigation have been blamed—not always wrongfully—for everything from the cost of health care to the national deficit, disallowing certain vexatious and duplicitous litigation seems not so radical a notion.

The fact that reactive litigation tends to waste judicial resources and thereby strain various aspects of our national welfare was not lost upon the United States Supreme Court when it promulgated Rule 13(a), requiring the assertion of compulsory counterclaims. (Fed. R. Civ. P. 13(a).) The requirement of Rule 13(a) that counterclaims arising out of the same transaction or occurrence be stated in the pleadings was specifically designed to prevent multiplicity of actions and to resolve all disputes arising out of common matters in one action. This rule was particularly directed against those litigants who failed to assert counterclaims in one action and then instituted a second action in which the foregone counterclaim became the basis of the complaint. (*Southern Construction Co. v. United States* (1962), 371 U.S. 57, 9 L. Ed. 2d 31, 83 S. Ct. 108.) Thus, the sort of multiplicity of suits that the Federal bench felt compelled to excise from practice is the exact type of activity which the majority has sought to protect with today's holding.

Finally, I question the majority's off-hand dismissal of the appellants' offered standard. In rejecting the appellants' proposed standard, the majority staunchly stands by the language introduced in *Royal League* stating that an injunction in cases like the ones at hand is only appropriate "when prosecution of the foreign action would result in fraud or gross wrong or oppression, or when a clear equity is presented which requires such restraint to prevent

a manifest wrong and injustice." (155 Ill. 2d at 50.) The majority goes on to say that "[t]he fact that a subsequent foreign action may be vexatious and harassing is but a consideration in the overriding standard of analysis, as opposed to being a standard in and of itself." 155 Ill. 2d at 50.

In analyzing the majority's opinion, I have attempted to divine a coherent policy—other than strict adherence to aged precedent—on which the majority relies. As argued above, however, reasoned analysis tends to direct this court to a more lenient standard for restraining duplicative litigation, rather than adhering to a rigid one formulated when civil practice must have been much different than it is today. Indeed, the rejection of the appellants' proposed standard today seems all the more anomalous when viewed in light of the language this court has chosen for imposing attorney sanctions.

In an attempt to limit the abuse of the judicial system, this court adopted Rule 137 (134 Ill. 2d R. 137). Illinois' version of the Federal Rule 11 sanction, Rule 137 (134 Ill. 2d R. 137) states:

> "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction ***."

In my mind, it is difficult to reconcile how this court can promote the imposition of monetary sanctions for attorneys or their clients for filing pleadings and motions for

improper purposes "such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," and at the same time allow this exact type of behavior in the reactive litigation context.

Arguably, in the reactive litigation context, the party seeking relief in the foreign court has interstate comity concerns in its corner. Given the preceding analysis, however, this consideration appears significantly diminished by other policy interests.

In sum, the public policy concerns of judicial economy, reducing the cost of litigation in general upon society, and preventing vexatious and harassment suits in the interest of justice outweigh any rationale the majority could have considered in reaffirming the language formulated in *Royal League.* I feel that the standard proffered by appellants strikes the proper balance between the competing interests. Thus, in cases where the defendant brings a subsequent foreign suit against the original plaintiff, based upon the same factual controversy, and the resolution of an issue in one court would be *res judicata* in the other, then the trial court may at its discretion enjoin a litigant if the foreign action is oppressive, vexatious, annoying, harassing, or unduly interferes with the progress of the prior instituted local action.

In the two instant cases, the trial court found that the later filed foreign suits were pursued purely to harass or unduly delay or unnecessarily increase the cost of litigation and enjoined the subsequently filed actions. Given the facts of these two cases, such a holding would not be a clear abuse of discretion; thus, the trial court should have been affirmed.

For the foregoing reasons, I dissent as to both Skyline and Daiwa.